IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAMIEN RUTTER,

           Plaintiff,

v.                                                 CIVIL ACTION NO.   2:24-cv-00026

LT. TIMOTHY TIBBS, et al.,

           Defendants.

MEMORANDUM OPINION AND ORDER

    Pending before the court is Defendant Steve Caudill's Motion to Dismiss, [ECF No. 9]. Plaintiff Damien Rutter ("Plaintiff") timely responded, [ECF No. 11], and Defendant Caudill replied, [ECF No. 12]. For the following reasons, Defendant Caudill's Motion to Dismiss, [ECF No. 9], is **GRANTED**.

    I.     Background

    Plaintiff filed suit in this court on January 10, 2024, against Defendants Timothy Tibbs, Michael Costello, and Steve Caudill. [ECF No. 1, ¶ 2]. His Complaint states four claims: (1) outrageous conduct; (2) excessive force in violation of the Eighth Amendment to the United States Constitution, brought under 42 U.S.C. § 1983; (3) deliberate indifference/supervisory liability; and (4) conspiracy to commit fraud. *Id.* ¶¶ 12–36. Only the third and fourth counts are directed at Defendant Caudill. *See id.*

Plaintiff seeks compensatory and punitive damages as well as attorneys' fees and costs. *Id.* ¶ 15.

At all times relevant to this matter, Plaintiff was incarcerated at North Central Regional Jail ("NCRJ"). *Id.* ¶ 1. Plaintiff alleges that on or about November 30, 2022, he was housed in the C-Unit at NCRJ and was called into the hallway where Defendants Tibbs and Costello asked him what was in his sock. *Id.* ¶ 7. Plaintiff told them that he had "his telephone numbers and his jail pin" inside his sock. *Id.* At this point, Plaintiff alleges that Defendant Tibbs instructed him to hand Defendant Tibbs what was in the sock and that when he reached down to comply, Defendant Tibbs pepper-sprayed him without warning. *Id.* After being pepper-sprayed, Plaintiff got on the ground to surrender, and Defendants Tibbs and Costello "proceeded to kick, punch, knee, and strike Plaintiff as he laid on the ground and was not resisting." *Id.* Defendant Costello allegedly pepper-sprayed Plaintiff while both Defendants were beating him, and he was laying on the ground. *Id.*

After this beating and second use of pepper-spray, Defendants Tibbs and Costello allegedly handcuffed Plaintiff and placed him in a holding cage during which time they discussed their failure to fully cover Plaintiff with pepper-spray. *Id.* ¶ 9. Defendant Tibbs then asked Plaintiff "what his problem was," to which Plaintiff replied that he didn't know what it was that Defendant Tibbs thought he had done but that he was sorry. *Id.* In response, Defendant Tibbs allegedly deployed pepper-spray two more times in Plaintiff's face and mouth while he was handcuffed,

2

shackled, and secured inside a holding cage. *Id.* He then exclaimed to Defendant Costello that he "got him." *Id.*

Defendant Caudill, who is located in Charleston, West Virginia, was not present for this incident. Rather, he is the Director of Security for the West Virginia Division of Corrections and Rehabilitation ("WVDCR"). *Id.* ¶ 2. In his role as Director of Security, Defendant Caudill reviews use-of-force reports. *Id.* Plaintiff alleges that during a one-year period, Defendant Caudill received over 100 reports accusing Defendants Tibbs and Costello, and other officers at NCRJ of use of force. *Id.* Plaintiff claims that, due to the number of use-of-force reports Defendant Caudill reviewed, he was on notice that "Defendants Tibbs and Costello ha[d] been involved in an excessive number of use of force events[,] . . . that Tibbs, Costello, and other Correctional Officers presented a clear and present danger to the inmates," and "that excessive force events were routinely taking place at NCRJ," but he failed to intervene to prevent constitutional violations from occurring. *Id.*

On April 26, 2024, Defendant Caudill filed the instant Motion to Dismiss, arguing that Plaintiff's Complaint should be dismissed against him for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). [ECF No. 9, at 1]. Specifically, Defendant Caudill contends that "the Complaint does not set forth a sufficient factual basis to state a plausible claim against [him] for deliberate indifference or conspiracy to commit fraud." *Id.* Alternatively, Defendant Caudill seeks dismissal on the basis of qualified immunity. *Id.*

3

## II. Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The Federal Rules of Civil Procedure require that a complaint make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-cv-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To achieve facial plausibility, the plaintiff must plead

facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### III. Discussion

#### A. Count III – Supervisory Liability/Deliberate Indifference

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "After incarceration, only the 'unnecessary and wanton infliction of pain,' . . . constitutes cruel and unusual punishment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (cleaned up) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The prohibition of cruel and unusual punishment gives inmates a "right to be free from malicious or penologically unjustified infliction of pain and suffering." *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Pepper-spraying an inmate who is compliant and poses no physical threat without warning or justification violates this standard. *See Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021).

Here, Plaintiff alleges that his body, face, and mouth were pepper-sprayed multiple times and that he was beaten, all without warning or justification. [ECF No. 1, ¶¶ 7–9]. Defendant Caudill, however, is not alleged to have been an active participant in those events but rather is only being sued for failing to prevent these alleged acts from occurring in the first place.

5

Plaintiff brings this claim against Defendant Caudill under 42 U.S.C. § 1983. The Supreme Court has held that anyone who—while acting under the color of state law—"deprives a person of any rights, privileges, or immunities secured by the Constitution and laws" may be held liable under § 1983. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal quotation marks omitted). It is well-established that multiple actors can be the cause of a single constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Although § 1983 liability may not be premised on a theory of *respondeat superior*, supervisory officials who are on notice that their subordinates are acting unlawfully may be held liable if they fail to intervene and prevent constitutional injuries, *id.*, or if their "supervisory indifference or tacit authorization of subordinates' misconduct [is] a causative factor in [those injuries]," *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

> To succeed in a supervisory liability case, a plaintiff must demonstrate:
>
> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted). To establish the first element, the plaintiff must show that "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a

6

'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Id.* (quoting *Slakan*, 737 F.2d at 373); *see also Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

Here, Plaintiff's claim against Defendant Caudill is entirely conclusory in nature, and he fails to allege facts sufficient to state a plausible claim for supervisory liability. *See, e.g.,* [ECF No. 1, ¶¶ 2 ("Defendant Caudill was further on notice that excessive force events were routinely taking place at the NCRJ."), 26 ("Defendant Caudill was aware of the pattern and practice of excessive and violent force used by Defendants Tibbs and Costello.")]. Plaintiff's allegations are legal conclusions which the court need not accept as true. *See Twombly*, 550 U.S. at 555 (explaining how courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In his Complaint, Plaintiff does assert a factual allegation that Defendant Tibbs was involved in over 100 use of force events over the course of a one-year period and that Defendant Caudill reviewed all use of force reports. [ECF No. 1, ¶ 2]. While Plaintiff does allege that these incidents took place prior to the November 30, 2022, pepper-spraying and beating, he fails to allege that those incidents were instances of unwarned and unjustified pepper-spraying and beating. He pleads no facts that establish that there was a widespread practice of these particular constitutional violations—unwarned and unjustified pepper-sprayings and beatings—at NCRJ prior to November 30, 2022.

7

Rather, Plaintiff simply alleges that Defendant Caudill knew of Defendants Tibbs' and Costello's alleged tendencies to engage in unlawful conduct generally because Caudill "personally reviewed use of force events that exceeded 100 events in [one]-year[']s time." *Id.* ¶ 21. In making this claim, he asks the court to jump hand-in-hand with him to the conclusion that Defendant Caudill tacitly authorized Defendant Tibbs' alleged misconduct. It is not an undue burden to require that the pleader meet the minimal standards of stating the wrong in a fashion which is recognized as sufficient under *Twombly* and *Iqbal* and the Federal Rules of Civil Procedure. Plaintiff has not established a "widespread practice of the particular unconstitutional conduct" which he claims he experienced. *See Shields v. Tibbs*, No. 2:23-cv-00491, 2024 WL 1804388, at *3 (S.D. W. Va. Apr. 25, 2024). As such, his claim for supervisory liability must be dismissed.

### B. Count IV

Finally, Defendant Caudill moves for dismissal of Count IV—conspiracy to commit fraud—as it relates to him. [ECF No. 9]. He alleges that, "[t]o the extent [this count] is intended to apply to Defendant Caudill, such a claim should be dismissed as Plaintiff has failed to make a sufficient showing to withstand the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." [ECF No. 10, at 11].

In response, Plaintiff clarifies that he is not asserting a claim against Defendant Caudill in Count IV. [ECF No. 11, at 1]. This, however, is not obvious in reading the Complaint. Instead of alleging that only Defendants Tibbs and Costello engaged in conspiratorial conduct, Plaintiff asserts that "[t]he *individual* Defendants

8

*herein* conspired with one another to file false incident reports." [ECF No. 1, ¶ 35 (emphasis added)]. Had Plaintiff not raised this point in his response brief, the court would have presumed Count IV to apply to all defendants, including Defendant Caudill. Although Plaintiff seeks to rectify this issue in his response brief, parties may not amend their complaints or cure deficiencies therein through briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Regardless, Plaintiff fails to state a claim upon which relief can be granted in Count IV against Defendant Caudill. The Federal Rules of Civil Procedure provide that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As it relates to Defendant Caudill, Plaintiff has not done so here. As such, Count IV must be dismissed as to Defendant Caudill for failure to state a claim upon which relief may be granted.

### IV. Venue

Finally, the court has concerns about whether the Southern District of West Virginia is the most appropriate venue for this case. As a general matter, cases arising under federal law "may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or (3) any judicial district in which any defendant

is subject to the court's personal jurisdiction if there is no other district. 28 U.S.C. § 1391(b)(1).

The federal venue statute allows a district court to "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). This statute gives courts authority to transfer an action *sua sponte* upon consideration of certain factors, such as convenience of parties and witnesses, as well as whether transfer would be in the interest of justice. *See* 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §§ 3844, 3847–48 (4th ed. 2023). It is proper, however, to first provide the parties with notice and an opportunity to be heard and present their views about the transfer. See, e.g., *Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011); *Moore v. Rohm & Haas Co.*, 446 F.2d 643, 647 (6th Cir. 2006); *Starnes v. McGuire*, 512 F.2d 918, 934 (D.C. Cir. 1974) ("[B]efore ordering transfer the judge should, at minimum, issue an order to show cause why the case should not be transferred, and thereby afford the parties an opportunity to state their reasons for believing that this forum is most convenient or that the proposed alternative forum is inconvenient or not within the ambit of § 1404(a).").

Here, all of the alleged activities that form the basis of the Complaint occurred at North Central Regional Jail, which is located in the Northern District of West Virginia. Furthermore, Plaintiff makes no statement as to why he believes the Southern District of West Virginia is the proper venue, nor has he alleged where each Defendant resides, except for Mr. Caudill, who has now been dismissed from this

action. In light of the foregoing, I **ORDER** the parties to brief me on the issue of whether this district or the Northern District of West Virginia is the most appropriate venue in which to litigate this case. The parties have fourteen (14) days from the entry of this order to respond if such party would oppose a *sua sponte* transfer of venue.

V. Conclusion

For the foregoing reasons, Defendant Caudill's Motion to Dismiss, [ECF No. 9], is **GRANTED.** The Defendant Caudill is hereby **DISMISSED** from this action. Counts I, II, and IV, remain pending against Defendants Tibbs and Costello. I **ORDER** the parties to submit briefs within fourteen (14) days of the entry of this order as to whether this district or the Northern District of West Virginia is the most appropriate venue in which to litigate this case if the party opposes a *sua sponte* transfer of venue. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 4, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

11